UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BYRON McCLAY                                        CIVIL ACTION

VERSUS                                               NO. 11-2863

SHERIFF MARLIN N. GUSMAN ET AL.                      SECTION "R" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Byron McClay, is a prisoner currently incarcerated in the Madison Parish Detention Center in Tallulah, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin N. Gusman and two of his deputies, C. Louque, Warden of the House of Detention ("HOD") facility in the Orleans Parish Prison system ("OPP"); and Chief Bordelon, another HOD supervisor. McClay alleges that while incarcerated in HOD in 2011-12, he was denied adequate medical care and subjected to unconstitutional conditions of confinement. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On May 8, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

# THE RECORD

McClay testified that he is currently incarcerated based upon a drug conviction on June 29, 2011, for which he is serving a sentence of seven (7) years in prison. He stated that he was incarcerated in the HOD unit of OPP for about nine (9) months from July 2011 until March 2012, when he was transferred from HOD to another facility in OPP. He confirmed that all of the conditions about which he complains in this case occurred during the nine (9) months he spent in the HOD facility after his conviction.

As to his claim that he did not receive adequate medical care, McClay testified that he was given the wrong medication for his high blood pressure, and the medicine made his nose bleed. He confirmed that he had received and reviewed his OPP medical records that I previously ordered produced, Record Doc. Nos. 5 and 10, and that they are accurate.

McClay confirmed the notations in his medical records that he was given several different medications for his high blood pressure while incarcerated in OPP, including hydrochlorothiazide, Norvasc,[1] atenolokl and lisinopril, but he could not recall specifically which one made his nose bleed. He acknowledged the notations made by a nurse-practitioner at OPP on medical records dated October 3, 2011, entitled "Hypertension Chronic Care Treatment Plan" and "Hypertension Order Set," stating:

---

[1]Norvasc is a brand name for amlodipine, a medication prescribed for treatment and prevention of angina and high blood pressure. http://medicinenet.com.

"Reported nose bleeds so he stopped Norvasc . . . Patient refused to take Norvasc because he was having nose bleeds. He stopped med[ication] about 1 1/2 weeks ago. Discontinue amlodipine. Start atenolol."

McClay stated that his nose bleeds began around September 2011 and lasted about one month. He said that when he complained about the nose bleeds, medical personnel at OPP switched him to another medication for his high blood pressure, but the nose bleeds continued. He said the nose bleeds only stopped when he stopped taking the medicine and refused all further medication. McClay testified that he never was placed on the correct medication that would not make his nose bleed, so he refused all high blood pressure medication. He stated that his blood pressure remains high now at his current place of confinement in Tallulah, although he is being given medication there that does not cause his nose to bleed.

McClay confirmed that the remainder of his claims in this case all relate to the conditions of his confinement in HOD. He stated that the conditions were unsanitary in that he "was sleeping on the floor and when you flushed the toilet, water came underneath my mat." He confirmed the allegation in his written submissions to the court that he had to sleep on a mat on the floor in HOD without a mattress for 17 days during his nine (9) months in the prison. He said that for the remainder of his stay in HOD, he had a bunk with a mattress, so that his complaint in this case relates to the 17 days he spent there on a mat without a mattress.

McClay also testified that the toilet frequently overflowed onto the floor when flushed. He alleged that conditions were overcrowded in that "they had 15 people in a ten-man cell." He described the cell as having ten bunks against the wall of the cell surrounding a small open area of floor space, where five (5) people had to sleep. He said a bathroom with two toilets was also located in the cell. McClay said he spent four months in the ten-man cell with 15 people in it. He also stated that the paint was peeling and there was mold on the cell walls.

Asked if he suffered any illness or other physical injuries as a result of these conditions, he said, "no, sir."

Asked about the allegation in his written submissions that he was fearful of retaliation by the sheriff's staff while in HOD, McClay testified that "I was scared they were gonna jump on me or something by me writing a [Section] 1983 on them." He testified, however, that no prison personnel in fact harmed him or took any action whatsoever against him.

On cross-examination, McClay testified that neither Sheriff Gusman nor either of the other two defendants in the case were personally involved or spoke to him about the medication that caused his nose bleeds or any other matters about which he complains in this case. He stated, however, that he has sued these defendants because they were all supervisory personnel ultimately responsible for medical service and conditions in HOD.

## ANALYSIS

### I.  STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[2]

## II.   MEDICAL CARE

McClay testified that he was a convicted prisoner at all times during which defendants allegedly failed to provide him with adequate medical care. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may

---

[2] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine,

333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In this case, McClay's allegations negate any inference that defendants acted with <u>deliberate indifference</u>.  Although high blood pressure may present a serious medial need, McClay's testimony and the verified medical records establish that jail personnel were <u>not</u> deliberately indifferent to his medical condition in the constitutional sense.  McClay has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials. Medical staff at OPP made continued efforts to address his high blood pressure by providing him with appropriate medication. When he began to experience nose bleeds, OPP medical personnel attempted to address his condition by changing his medication. Although plaintiff alleges that their attempts to address the nose bleeds with differing medication regimes were unsuccessful, they did not intentionally ignore his problem.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition. While it is clear from his allegations and testimony that he is not satisfied with the nature of his medical care, and that he experienced nose bleeds as prison medical personnel attempted to control his high blood pressure with different types of medication, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional [or particular] treatment is a classic example of a matter for <u>medical judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In McClay's case, the decision initially to prescribe a particular kind of hypertensive medication was a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense. His complaints of nose bleeds were not met with indifference, but with an attempt to address the problem with different medication.

Contentions like McClay's that amount to a disagreement with the type of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional

violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534

(5th Cir. 1999) (citation omitted); see id. (active treatment of prisoner's serious medical

condition that ultimately resulted in death does not constitute deliberate indifference,

even if treatment was negligently administered); see Rowe v. Norris, 198 F. App'x 579,

581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's

choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray

or additional diagnostic techniques or forms of treatment is indicated is a classic example

of a matter for medical judgment. A medical decision not to order an X-ray, or like

measures, does not represent cruel and unusual punishment. At most it is medical

malpractice . . . ."); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or

timing of medical services provided cannot support a Section 1983 claim); Varnado v.

Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical

implantation of hip prosthesis, who complained of pain in his hip and who was ultimately

diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate

indifference when he was seen by medical personnel "numerous times for problems

relating to his hip."); Wesson, 910 F.2d at 284 (allegations establishing provision of

medical treatment are inconsistent with inference of deliberate indifference); Williams

v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate

with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was

unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Plaintiff's complaints in this case about his medical care for his high blood pressure and nose bleeds fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard. This claim must be dismissed.

III.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony establishes that he was a convicted prisoner at all relevant times concerning the allegedly unsanitary and overcrowded conditions about which he complains at the HOD facility at OPP during his nine (9) months in that section of the prison.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" Hamilton v. Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981); citing Estelle, 429 U.S. at 103; Hutto v. Finney, 437 U.S. 678, 687 (1978)); accord Stanfield v. Gusman, No. 09-7183, 2010 WL 2133877, at *3 (E.D. La. Apr. 21, 2010) (Roby, M.J.), report and recommendation adopted, 2010 WL 2075550 (E.D. La. May 20, 2010) (McNamara, J.).

12

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components." Davis, 157 F.3d at 1006 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson, 501 U.S. at 298-99; Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Otherwise, "to the

extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S. Ct. at 2399. Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id. The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989) (footnote omitted).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. Wilson, 501 U.S. at 303. "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8). "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Plaintiff has alleged no facts which show that the defendant or any other party acted with "deliberate indifference" in either creating these conditions or failing to respond to them. Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an <u>excessive</u> risk of harm to plaintiff existed because of the conditions he described. In fact, when asked if he suffered any illness or other physical injury as a result of the conditions of his confinement, plaintiff responded, "No, sir."

The Constitution requires that prison officials provide prisoners with only reasonably adequate food, water, clothing, shelter and sanitation. <u>Gates v. Cook,</u> 376 F.3d 323, 332 (5th Cir. 2004) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." <u>Holloway v. Gunnell</u>, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)); <u>accord</u> <u>Hernandez v. Velasquez</u>. 522 F.3d 556, 560 (5th Cir. 2008).

Short-term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir. 1992); <u>Robinson v. Illinois State Corr. Ctr.</u>, 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." <u>Burton v. Cameron County</u>, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing <u>Green v. Ferrell</u>, 801 F.2d 765, 771 (5th Cir. 1986)); <u>accord</u> <u>Benshoof v. Layton</u>, 351 Fed. Appx. 274, 2009 WL 3438004, at *4 (10th Cir. 2009); <u>Gates v. Cook</u>, 376 F.3d 323, 342 (5th Cir. 2004).

None of McClay's allegations about the conditions he experienced at the jail for the 17 days during which he slept on a mat on the floor before he was assigned to a bed with a mattress establish constitutional violations. <u>See</u> <u>Davis</u>, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing <u>Smith v. Copeland</u>, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); <u>Davis v. St. Charles Parish Corr. Ctr.</u>, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing <u>Talib</u>, 138 F.3d at 215; <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

As to overcrowding, "the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. . . . '[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.'" Morrison v. Gusman, No. 10-217, 2010 WL 724173, at *7 (E.D. La. Feb. 22, 2010) (Zainey, J.) (quoting Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001)) (citing Rhodes, 452 U.S. at 347-50) (additional citations omitted).

The Fifth Circuit has not rendered a binding precedential decision concerning the constitutionality of a temporary mattress deprivation, but it addressed a situation similar to that alleged by McClay in an unpublished opinion.  The district court vacated the jury's verdict, which had found that depriving the plaintiff inmate of a mattress, blanket and toilet paper for two and one-half days violated the Eighth Amendment, and granted judgment as a matter of law to the prison official defendants.  The Fifth Circuit affirmed.

> The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold [who was] confined indoors [in northern Mississippi in November] does not constitute a deprivation of the minimal civilized measures of life's necessities. Although the conditions of [plaintiff's] confinement were uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Phillips v. East, 81 Fed. Appx. 483, 2003 WL 22770162, at *2 (5th Cir. 2003) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); Palmer v. Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999); Talib, 138 F.3d at 215; Novak v. Beto, 453 F.2d 661, 665-66 (5th Cir. 1971)).

Phillips was in a different procedural posture than the instant case, having proceeded through a trial on the merits, and the Fifth Circuit considered the evidence that had been introduced at trial concerning defendants' legitimate penological reasons for depriving the inmate of a mattress. Regardless of those reasons, the appellate court plainly stated that the denial of a mattress for two and one-half days to an inmate who is incarcerated indoors does not violate the Eighth Amendment. Phillips is persuasive authority that the Fifth Circuit would find that McClay's lack of a mattress for 17 days was not unconstitutional. Several other circuits have held in recent years that deprivation of a mattress for a limited period of time is not per se unconstitutional. See, e.g., Fischer v. Ellegood, 238 Fed. Appx. 428, 2007 WL 1624315, at *4 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); Stephens v. Cottey, 145 Fed. Appx. 179, 2005 WL 1971700, at *1(7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); Schroeder v.

Kaplan, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (sleeping on floor without mattress for four weeks does not violate Eighth Amendment).

McClay alleges no serious harm or risk of serious harm in the constitutional sense. In fact, he concedes that he experienced no illness or other kind of injury or problem as a result of the conditions he experienced in HOD. Short-term living conditions such as those described by McClay during the time when he was confined in HOD may be a temporary inconvenience, but he has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and this claim must also be dismissed.

IV.    NO PERSONAL INVOLVEMENT: SHERIFF, PRISON SUPERVISORS

McClay makes no claim that defendant Sheriff Gusman or the other supervisory personnel he has named as defendants were personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly

responsible for plaintiff's injury, if any, were in their employ or under their supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that these defendants were personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of these defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which

the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, McClay must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, McClay must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither McClay's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Sheriff Gusman.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this \_\_\_\_13th\_\_\_ day of July, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.